UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY GORDON,

        Plaintiff,

                                                      Case Number 09-13655

v.                                                 Honorable Thomas L. Ludington

SAGINAW PUBLIC SCHOOLS,

        Defendant.

_____ /

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 15, 2009, Plaintiff Anthony Gordon filed a complaint [Dkt. #1] against Saginaw Public Schools ("the District") alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e et seq., which prohibits discrimination based on national origin, and the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 et seq. Plaintiff's claims arise from a series of events which led to termination of his employment with the District after sixteen years of service.

Defendant Saginaw Public Schools filed a motion for summary judgment [Dkt. # 9] on September 13, 2010.  Defendant generally alleges that Plaintiff cannot prove a prima facie case of age or national origin discrimination and alternatively that it had legitimate, non-discriminatory reasons for Plaintiff's termination. Plaintiff filed a response on October 4, 2010 [Dkt. # 11], and Defendant filed a reply on October 18, 2010 [Dkt. #12].

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers.  The Court concludes that oral argument will not aid in the disposition of the motion.  Accordingly, it is **ORDERED** that the motion be decided on the

papers submitted.  E.D. Mich. LR 7.1(e)(2).  For the reasons provided below, the Court will **GRANT** Defendant's motion for summary judgment.

**I**

Plaintiff, who is of British national origin, has a master's degree in education technology from Bowling Green State University. On February 1, 1993, Plaintiff was hired by the District as a consultant.  In July 1995, the District appointed him as Technology Coordinator for the Saginaw Public Schools and he was promoted to Supervisor of Information Technology four years later. Plaintiff's position, Defendant contends, was subsequently eliminated due to financial considerations. He then became an employee of the Educational Support Group.[1] In this position, Plaintiff was first supervised by Burris Smith and then by Antoinette Turner.

The District, however, experienced continued economic pressures.  During December 2008 and January 2009, the District had a committee examine staffing reductions as part of its overall task to overcome a recently discovered $4.4 million deficit. Each department was required to eliminate a portion of its budget and explain to the District's administration how it would function.  In

---

[1]In his brief, Plaintiff contends that he was demoted in June 2005, which resulted in a $1,700 a year pay cut and he was also transformed into a non-union, at-will employee, causing him to lose a contractually agreed to severance payment in the event of termination. He also states that this job title change precluded him from being able to grieve his termination.  Plaintiff, however, did not bring a claim for this alleged discrimination to the Equal Employment Opportunity Commission ("EEOC") in a timely manner.  To file a claim under Title VII or the ADEA, a plaintiff must file a charge with the EEOC within 300 days of the alleged discrimination and file suit within 90 days of a right-to-sue-letter from the EEOC. 42 U.S.C. § 2000e-5(e)-(f); 29 U.S.C. § 626(d)(1)(B) and (e); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). Claims under the Michigan Elliot-Larsen Civil Rights Act are subject to the three year state of limitations set forth in M.C.L. § 600.5805(10).  Plaintiff's instant claims were brought more than four years after his job title change in June 2005. Additionally, the District states that the severance packages Plaintiff refers to require more than twenty years of service in order to qualify while Plaintiff only had sixteen at the time of his termination. (Def's Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. A at 11.)

evaluating Plaintiff's department, Ms. Turner indicated that her division could function in Plaintiff's absence.  The Superintendent, Dr. Barris, also asked Kyle Warner, the Technical Services Manager, to submit a proposal for reorganizing his department. At that time, district employees were providing technical services out of six different departments instead of one centralized department. Defendant contends this system was proving to be inefficient, and Warner's proposal recommended consolidating all employees providing technical services within the District into one department who would then report to a single administrator.

An executive team then met to discuss Plaintiff's general attributes as an employee.  The executive team included Dr. Barris, Ms. Turner, Sheila Dorsey, the Acting Executive of Human Resources, and Safiya Mosley, an employee with the Information Services Department.  The executive team decided to terminate Plaintiff's employment because Plaintiff excelled at generating ideas but was less effective implementing the ideas, leaving implementation to his staff. The executive team concluded that the District needed employees who were able to implement ideas as well as generate ideas. Although Dr. Barris was ultimately responsible for all terminations, Ms. Turner initially recommended that Plaintiff's employment be terminated.

Plaintiff, however, contends that he was advised on January 20, 2009 that his position was eliminated due to declining enrollment and the District's current economic situation.  Ms. Turner explained to Plaintiff that his position was eliminated because of financial downsizing. She inquired as to whether Plaintiff was old enough to retire. In total, nine employees from Plaintiff's group, the Educational Support Group, were terminated in 2009.  Five employees were terminated at the same time Plaintiff's employment was terminated.

After Plaintiff's employment was terminated, some of his responsibilities were delegated to

Mr. Warner, who received a raise for an unspecified amount along with additional duties, and some responsibilities were delegated to Ms. Mosley. At the time Plaintiff's employment was terminated, Mr. Warner, who has a bachelor's degree in computer science, was forty-eight years old and had been employed by the District for nineteen years. Ms. Mosley was thirty-three years old at the time Plaintiff's employment was terminated. In deciding to have Mr. Warner assume the majority of Plaintiff's duties, Ms. Turner advised Dr. Barris that Mr. Warner could address most of Plaintiff's job responsibilities but Plaintiff did not have the adequate skill set to address Mr. Warner's job responsibilities. The information technology department also hired another individual, Adam Kerns, as a Network Support Specialist prior to Plaintiff's termination.  However, Mr. Kerns, who was twenty-four years old at the time of his hiring, did not have any job duties that overlapped with Plaintiff's former job duties.

## II

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. Pro. 56(e)(2);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III

### A

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA, a plaintiff may either produce direct evidence of age discrimination, or rely upon circumstantial evidence that would permit an inference of discrimination under the burden-shifting method of *McConnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510 (6th Cir. 2004). Direct evidence is that which, if believed, "requires

-5-

the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Rodriguez v. FedEx Freight E., Inc.*, 487 F.3d 1001, 1007 (6th Cir. 2007) (citation and quotation omitted). "Direct evidence of discrimination does not require the factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice among members of the protected group." *Id.* "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 405, 410 (6th Cir. 2008). With both direct and circumstantial evidence, the burden of persuasion remains on the plaintiff to show that "age was the 'but for' cause of their employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ---, 129 S. Ct. 2343, 2351 n.4 (2009).

If a plaintiff is unable to present direct evidence of the alleged discrimination, the question becomes whether the plaintiff is able to establish a prima facie case of discrimination through circumstantial evidence. *Coomer*, 370 F.3d at 510. A plaintiff successfully establishes a prima facie case under the *McDonnell Douglas* test when he produces "evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger person.[2]" *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). If the termination arises as part of a work force reduction, the Sixth Circuit has modified the fourth element to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the

---

[2]Plaintiff asserts in his brief that the fourth element of a prima facie case under *Lilley* requires that he was either replaced or treated less favorably than someone younger. This, however, is incorrect as the court in *Lilly* clearly states that the requirement is that "he was *replaced* by a younger person." *Id.* at 752 (emphasis added).

employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp*, 896

F.2d 1457, 1465 (6th Cir. 1990).

The threshold question is thus whether the District terminated Plaintiff's employment in the

context of a work force reduction. "A work force reduction situation occurs when business

considerations cause an employer to eliminate one or more positions within the company. An

employee is not eliminated as part of a work force reduction when he or she is replaced after his or

her discharge." *Barnes*, 896 F.2d at 1465. A person is considered replaced "only when another

employee is hired or reassigned to perform the plaintiff's duties." *Id.* A person is not considered

replaced when his duties are absorbed by another person or "when the work is redistributed among

other existing employees already performing related work." *Id.* Furthermore, evidence that a

younger employee was kept in a position for which the plaintiff was qualified is not sufficient to

create an inference of age discrimination. *Id.* In a reduction in force case, the plaintiff does not make

out a prima facie case absent additional direct, circumstantial, or statistical evidence tending to

indicate that the employer singled out the plaintiff for discharge for impermissible reasons. *Asmo*

*v. Keane, Inc.*, 471 F.3d 588, 592-93 (6 th Cir. 2006). The evidence must be sufficiently probative

to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff

because of age. *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004).

As previously noted, the District contends the decision to terminate Plaintiff's employment

was a result of the financial difficulties it was facing. Plaintiff explains that he was not eliminated

due to work force reductions because he was replaced by Warner, Mosley, and Kerns, and evidence

of replacement shortly after termination undermines any explanations of downsizing. *Carlton v.*

*Mystic Transp. Inc.*, 202 F.3d 129, 136 (2d Cir. 2000). However, because Plaintiff's duties were

reallocated between Warner and Mosley, existing employees who were already performing related work, they did not "replace" Plaintiff. *Barnes*, 896 F.2d at 1465. Furthermore, Kerns, who was possibly hired before Plaintiff's termination, did not perform any duties that formerly belonged to Plaintiff and thus cannot be considered Plaintiff's replacement. *Id.* Because this is a reduction in force case, Plaintiff must present evidence that is sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against him because of age to satisfy the fourth requirement of a prima facie case of age discrimination. *Gragg*, 373 F.3d at 767-68.

**1**

Plaintiff meets the first two requirements of a prima facie case of age discrimination: he was sixty years old at the time of his termination and he was subjected to an adverse employment action by being terminated. Defendant, however, asserts that Plaintiff cannot meet the third or fourth requirement of the prima facie case. To demonstrate that he was qualified, Plaintiff "must prove that he was performing his job 'at a level which met his employer's legitimate expectations.' "*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). If a plaintiff "was not doing what his employer wanted him to do, he was not doing his job . . . . [and this] does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors.' " *Id.* (quoting *Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1223 (7th Cir.1980)).

Defendant contends that Plaintiff was not otherwise qualified for the position because Plaintiff struggled with implementing ideas and the District needed an employee who could satisfactorily implement, and not simply develop, ideas. Based on the assessment provided by Ms. Turner, Mr. Warner assumed the bulk of Plaintiff's responsibilities because he was qualified to do

so while Plaintiff had not identified the necessary skill set to perform Mr. Warner's duties. Plaintiff, on the other hand, asserts that it is undisputed that he was qualified for the position because he had served the District satisfactorily for sixteen years prior to termination of his employment. A plaintiff's conclusory opinion that he was better qualified than another employee who was retained in a reduction-in-force case is insufficient to establish a prima facie case of age discrimination. *Southmayd v. Apria Healthcare, Inc*., 412 F. Supp. 2d 848, 857 (E.D. Tenn. 2006). Instead, it is the employer's motivation that is the key factor, not the employee's perception about his abilities or skills. *Id.* Defendant's decision to retain Mr. Warner was based on both his and Plaintiff's job performance and the needs of the consolidated information technology department. Plaintiff has not provided evidence that proves that he was performing his job with a level of quality that met his employer's legitimate expectations, which required more than simply "developing ideas." As a result, Plaintiff has not demonstrated that he can satisfy the third element of a prima facie case of age discrimination.

**2**

Defendant also contends that Plaintiff cannot satisfy the fourth prima facie requirement of presenting evidence that is sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age. *Gragg*, 373 F.3d at 767-68. As evidence of Defendant's intentional discrimination, Plaintiff asserts that Dr. Barris set in motion a process to "oust" Plaintiff, and swore Mr. Warner to secrecy about the content of the departmental team meetings. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 10; *see contra* Def.'s Mot. for Summ. J. Ex. E at 20-21 (stating that Warner did not speak with Gordon about downsizing proposal because Warner did not think it was necessary).) The accepted proposal to consolidate and reorganize the

information technology department included Warner "giving himself" a $10,000 raise and the bulk

of Plaintiff's job responsibilities. (*Id*. at 10-11 (Plaintiff stating that Warner gave himself a raise).)

Plaintiff summarizes that Mr. Warner and Ms. Mosley, both younger than Plaintiff, were given his

job responsibilities, with only Mr. Warner receiving additional compensation. According to Plaintiff,

these facts established that younger employees–who Plaintiff believes had far less experience and

far less knowledge in the field–were treated more favorably.

    Plaintiff does not explain how his allegations that the departmental team meetings were done

in secret or that Dr. Barris was attempting to "oust" him are related to his claim of age

discrimination. Furthermore, as noted above, a person is not considered replaced when his duties

are absorbed by another person or "when the work is redistributed among other existing employees

already performing related work" and evidence that a younger employee was kept in a position for

which the plaintiff was qualified is not sufficient to create an inference of age discrimination. *Id.*

As a result, this evidence is insufficient to establish that Plaintiff's age was the "but for" factor in

his termination. *Gross*, 129 S. Ct. at 2351 n.4 (2009).

    Plaintiff also offers Ms. Turner's inquiry into whether Plaintiff was of retirement age after

Plaintiff received notice of his termination as evidence of Defendant's discriminatory motive.

Plaintiff asserts that this, coupled with her recommending that Plaintiff's employment be terminated,

demonstrates that Plaintiff was selected in part because of his age and his ability to retire.  While

Ms. Turner's statement could be considered disparaging, it does not demonstrate, standing alone,

discriminatory intent in Plaintiff's termination because the isolated statement that occurred

subsequent to Plaintiff's termination "is more of a friendly inquiry than a covert attempt to force

retirement." *See Woythal v. Tex-Tenn Corp*.,  112 F.3d 243, 247 (6th Cir. 1997); *cf. McDonald*, 898

F.2d at 1162 (older employee told he could be "cheaply replaced with a younger salesman"); *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir. 1994) ("old man," "old and inflexible" and "incapable"); *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994) ("at your age you cannot produce like you once could, and we are going to have to make some kind of adjustment"); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1108 (9th Cir. 1991) ("old warhorse"); *Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 601 (D. Me.1994) (employer provided plaintiff with unsolicited and unwelcome retirement information package and suggested that he retire). As a result, Plaintiff has not satisfied the fourth requirement of a prima facie case of age discrimination.

## B

### 1

In the event Plaintiff were to present a prima facie case of age discrimination, the burden would then shift to the District to provide a legitimate, non-discriminatory reason for its adverse employment action. *Burzynski*, 264 F.3d at 622. An employer's need to reorganize due to economic downturn is a valid, non-discriminatory reason for eliminating a plaintiff's job. *Depas v. Stocker & Yale, Inc.*, No. 02-2369, 2004 WL 771835, at *1, *3 (6th Cir. April 9, 2004). In *Depas*, for example, the fifty-eight year old plaintiff engineer was terminated during his employer's reorganization. *Id.* at *2-3. The former employer's CEO had made several comments that the company needed "young blood" and after the plaintiff's termination, a twenty-seven year old engineer was hired. *Id.* at *3, *5. The employer, however, denied the allegations of age discrimination and presented evidence that the reorganization was necessary to increase profitability because of decreased sales. *Id.* at *5. One of the employer's general managers submitted a proposal suggesting that the product line on which

the plaintiff worked be eliminated to increase profitability. *Id.* at *1. The court found that evidence of the employer's use of an allegedly ageist remark, the timing of which the plaintiff was unable to specifically recall, was insufficient to support the plaintiff's discrimination claims. *Id.* at *4. The Court of Appeals for the Sixth Circuit affirmed that the district court's order granting summary judgment. *Id.*

Defendant contends that, as the employer in *Depas*, it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Specifically, Defendant had to overcome a $4.4 million deficit, requiring downsizing and making the departments more efficient. Plaintiff testified at his deposition that there were financial hardships during the relevant time period because the director of finance had failed to regulate outflow of funds. (Def.'s Mot. for Summ. J. Ex. B 35:5-12.) The downsizing required each department to eliminate a portion of its budget and consider its functionality with fewer employees. As a result, job cuts were unfortunate but necessary according to the Defendant. In analyzing the situation, Mr. Warner's reorganization proposal included centralizing and minimizing the technical services staff, as well as Ms. Turner, Plaintiff's supervisor, indicating that his absence would not affect her division. The decision to terminate Plaintiff's employment was made by the executive committee, not Dr. Barris individually, because of Plaintiff's inability to implement ideas. Defendant summarizes Plaintiff's termination as being based on Mr. Warner's proposal, each department's required budget cuts, and the executive team's evaluation of Plaintiff's attributes and weaknesses. Accordingly, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination based on economic restructuring, which it carried out by terminating a number of employees and consolidating the area of services in which Plaintiff worked.

**2**

Once the defendant has articulated a legitimate, non-discriminatory reason for the plaintiff's termination, the burden shifts back to the plaintiff to show that this reason is a pretext for age discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff can establish pretext "by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 143 (citation and quotation omitted). This can be accomplished by demonstrating that (1) the proffered reason has no basis in fact; (2) the reason did not actually motivate the discharge; or (3) the reason was insufficient to motivate the discharge. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

In attacking an employer's explanation for the discharge, a plaintiff may not rely upon "mere personal beliefs, conjecture and speculation." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Nor can a plaintiff prove pretext merely by asserting that a better business decision could have been made. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1179 (6th Cir. 1983) ("the ADEA was designed to protect older workers from arbitrary classifications on the basis of age, not to restrict the employer's rights to make bona fide business decisions.") A plaintiff cannot show pretext by merely claiming that he was "better qualified" than younger employees who were retained, as an employee's evaluation of his own performance or qualification is irrelevant. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). In order to show pretext with regard to the relative qualifications between a plaintiff and any other employee, the plaintiff must demonstrate that defendant's business judgment "was so ridden with error that defendant could not have honestly relied upon it." *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980); *see also In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988).

Plaintiff contends that Defendant's explanation is factually implausible because his position was included in the 2008-2009 budget, and thus there were sufficient funds to cover Plaintiff's salary and benefits.  Plaintiff additionally asserts that the justification for his termination was that he lacked the skill-set to perform at Warner's "level." (Pl.'s Resp. to Def.'s Mot. for Summ. J. 12.) According to Plaintiff, this is still contrary to Defendant's answers to interrogatories which state that Plaintiff's termination was unrelated to his performance, and that varied and inconsistent reasons are evidence of pretext.  *See Fox v. Certainteed*, No. 98-1948, 1999 WL 1111495, at *9  (6th Cir. Nov. 23, 1999) (rejecting the plaintiff's assertion that the defendant's post-termination explanations were  inconsistent). Plaintiff again argues that replacement shortly after discharge undermines any explanation of downsizing.

Defendant submits that Plaintiff cannot, and has not, demonstrated that its proffered legitimate, non-discriminatory reason was pretext. Plaintiff conceded that the District was experiencing financial hardship and several employees lost their jobs at the same time as Plaintiff. Additionally, Plaintiff has not provided a specific example of an ageist remark made by the District and Plaintiff was not "replaced" by a considerably younger person with far less experience, but instead his responsibilities were divided among existing employees. Defendant emphasizes that Plaintiff's main allegation is that he was replaced by Mr. Warner, who he contends is twenty years younger than Plaintiff and has far less experience.  However, Mr. Warner is twelve years younger than Plaintiff and worked for the district for nineteen years – three years longer than Plaintiff – at the time of Plaintiff's termination. As previously noted, Plaintiff's supervisor also determined that Mr. Warner was able to handle Plaintiff's job responsibilities, but that Plaintiff did not have the skills and experience to handle Mr. Warner's responsibilities.

-14-

Plaintiff's assertions of pretext rely on his personal belief, speculation as to other employee's qualifications, and budgetary decisions that Plaintiff believes were improperly made. Although Plaintiff's salary was included in the budget, the budgetary decisions became necessary because of the significant deficit. Defendant's reasons for Plaintiff's termination were not varied and inconsistent; in evaluating the budgetary concerns and necessary employee reductions, Plaintiff was chosen for termination based on his performance comparison with other individuals performing similar responsibilities. Defendant then made the decision to retain Mr. Warner and have him assume the majority of Plaintiff's duties based on the evaluation of both Mr. Warner's and Plaintiff's abilities, and Mr. Warner's tenure with the District. Because Defendant has offered a legitimate, non-discriminatory reason that Plaintiff has not shown to be pretext, Defendant's motion for summary judgment should be **GRANTED**.

## IV

### A

The *McDonnell Douglas/Burdine* burden-shifting analysis similarly applies in analyzing a claim under Title VII for employment discrimination on the basis of national origin. *Ipina v. State of Mich. Dep't of Mgmt. & Budget*, 699 F. Supp. 132, 134-35 (W.D. Mich. 1998). To establish a Title VII national origin discrimination prima facie case, a plaintiff must show that (1) he is a member of a protected class, (2) that he was subjected to an adverse employment action, (3) he was qualified for the position in question, and (4) that similarly-situated, non-protected employees received preferential treatment. *Kim v. Maxey Training Sch.*, No. 01-2191, 2002 WL 1042094, at *1 (6th Cir. May 22, 2002). A plaintiff must show that he is similarly-situated to the non-protected employee in all relevant respects in order to compare the plaintiff's treatment to that of the non-

-15-

protected employee.  *Kim*, 2002 WL 1042094, at *1 (citation and quotation omitted).

Defendant contends that Plaintiff has failed to produce direct evidence of discrimination on the basis of his national origin by providing only general assertions that Dr. Barris criticized his speech at public meetings and made jokes about Plaintiff's accent. Plaintiff argues that a decision maker's statement concerning a plaintiff's accent and speech pattern can be considered direct evidence of discrimination based on national origin. *Rodriguez*, 487 F.3d at 1008 (finding that a supervisor's corroborated derogatory statements were properly considered direct evidence of national origin discrimination where the supervisor was responsible for the allegedly discriminatory employment action). The court in *Rodriguez* also noted that it had previously rejected a plaintiff's argument that comments regarding his accent and poor command of the English constituted direct evidence only because neither of the individuals who made the comments were responsible for the allegedly discriminatory employment action. *Id.* (citing *Moham v. Dominguez*, 175 F. App'x 11 (6th Cir. 2006).

Plaintiff claims that he has presented direct evidence that the decision maker, Dr. Barris, made statements directed at Plaintiff's national origin and that Dr. Barris is the ultimate decision maker. Plaintiff also states that Ms. Turner was present during the alleged incidents and that she told Plaintiff that Dr. Barris disliked everyone in England.  However, Ms. Turner, Ms. Dorsey, and Mr. Warner's deposition testimony reflects that none of the individuals heard Dr. Barris making any jokes or criticizing statements about Plaintiff's accent or national origin. (Def.'s Mot. for Summ. J. Ex. C at 14; Ex. E at 18-19; Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. D at 9.) Plaintiff states that he complained to the District about Dr. Barris' conduct, but his supervisor, Ms. Turner, did not receive any of these complaints. (Def.'s Mot. for Summ. J. Ex. H at 10.)  Because

-16-

these assertions require the factfinder to make a series of inferences to conclude that Plaintiff's national origin was a motivating factor in the District's decision to terminate his employment, it cannot be considered direct evidence. Plaintiff's allegations do, however, create an issue of material fact as circumstantial evidence of discrimination based on national origin.

Although Plaintiff is British and was subjected to adverse employment action, Defendant has demonstrated that Plaintiff's employment was terminated because of downsizing and he was not the most qualified applicant for the remaining requirements of the District. As previously noted, Plaintiff had difficultly implementing ideas, and the District needed someone who could do so effectively. Plaintiff has also not provided evidence of a similarly-situated, non-protected employee receiving preferential treatment.  Five other employees were terminated at the same time. Mr. Warner is not similarly-situated to Plaintiff because Mr. Warner was determinated to have a broader skill set, allowing him to handle Plaintiff's job responsibilities, whereas Plaintiff was deemed by his supervisor to not have the necessary skills to handle Mr. Warner's job responsibilities. Mr. Warner also had seniority over Plaintiff by being an employee for nineteen years as opposed to Plaintiff's sixteen years with the District.

Dr. Barris did not make the decision to terminate Plaintiff's employment alone, and Plaintiff has not shown that the alleged comments regarding his nationality were made or that there is a causal connection between the alleged comments and his termination. Plaintiff has additionally not demonstrated that a similarly situated, non-protected employee received preferential treatment because Mr. Warner, at the very least, had seniority over Plaintiff based on his longer tenure with the District.  As a result, Plaintiff has not established a prima facie case that his termination was a result of discrimination based on national origin and Defendant's motion for summary judgment will

be **GRANTED**.

## B

Even if Plaintiff were able to establish a prima facie case for discrimination based on his national origin, the District contends that Plaintiff cannot demonstrate by a preponderance of the evidence that the legitimate, non-discriminatory reasons for his termination–Defendant's budgetary concerns and subsequent workforce reduction–were pretext.  Given that Defendant has proffered a legitimate reason for Plaintiff's termination, the burden shifts back to Plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Plaintiff may establish that Defendant's proffered reason is mere pretext by establishing that it: (1) has no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Under the first prong,  Plaintiff must put forth "evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are 'factually false.' " *Id.* Plaintiff is required to show "more than a dispute over the facts upon which the discharge was based." *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Plaintiff must put forth evidence that Defendant did not "honestly believe" in the given reason for Plaintiff's termination. *Id.*; *see also Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir .2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). A jury "may not reject an employer's explanation . . . unless there is a sufficient basis in the evidence

for doing so" because such a rejection would impermissibly shift the burden of persuasion from the plaintiff to the defendant; "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083.

Under the second prong, Plaintiff can establish pretext by showing that it "was more likely than not" that Defendant terminated Plaintiff based on an illegal motivation. *Id.* at 1084. Put another way, Plaintiff must show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* Finally, under the third prong, Plaintiff must provide evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. *Id.*

Plaintiff does not provide specific examples of discrimination on the basis of his national origin, but asserts that his claim is based on Dr. Barris' behavior over an extended period of time. Although Dr. Barris is ultimately responsible for terminations in the District due to his position as superintendent, it was Plaintiff's supervisor, Ms. Turner, who recommended that Plaintiff be terminated based on comparison of his abilities with Mr. Warner's abilities. Mr. Warner also provided a separate proposal for downsizing and centralizing the information technology department, and reported to Dr. Barris that Plaintiff was not a necessary employee under the new department proposal. As a result, Defendant contends that Plaintiff has not provided any evidence linking Plaintiff's national origin to the District's decision to terminate his employment.

Plaintiff also contends that he has shown that Defendant's reasons for his termination were pretext for reasons similar to those provided under his ADEA arguments. First, Plaintiff notes that his position had been included in the budget for the 2008-2009 school year, and there were thus

-19-

sufficient funds in the budget to cover his salary and benefits, making the District's claim of a financial deficit mere pretext.  Second, Plaintiff emphasizes that he was chosen for termination instead of Warner allegedly because Plaintiff lacked the skill set to perform Warner's job responsibilities.  Because the reasons proffered in his notice of termination was unrelated to his performance, Plaintiff contends that this too is pretext. Plaintiff also relies on the hiring of Mr. Kerns, which he claims took place after he was terminated but Defendant, on the other hand, states that Mr. Kerns was instead hired at least two weeks before Plaintiff's termination. Even assuming that Mr. Kerns was hired after Plaintiff's termination, he does not perform any job responsibilities that overlap with Plaintiff's prior job responsibilities and, as a result, cannot be considered Plaintiff's replacement.

As previously explained, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination due to budgetary concerns and workforce reduction. Plaintiff, however, has not provided evidence that Defendant's legitimate, non-discriminatory reasons for Plaintiff's termination were pretext or that the assessment of Mr. Warner's skills compared with Plaintiff's skills were false, inaccurate, or not made. Plaintiff has also not shown that the sheer weight of the evidence makes it more likely than not that Defendant's reasons for termination were pretext, because Dr. Barris' isolated remarks lack a temporal proximity or a causal connection to Plaintiff's termination. Finally, Plaintiff also has not provided evidence of an employee not in the protected class that engaged in a similar activity, such as generating ideas but failing to implement them, who was not terminated.  As a result, Plaintiff has not shown that Defendant's reasons for termination were pretext and Defendant's motion for summary judgment will be **GRANTED** on this claim.

**VI**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 9] is **GRANTED**.

It is further **ORDERED** that Plaintiff's wrongful termination based on age discrimination claim under the Age Discrimination in Employment Act is **DISMISSED WITH PREJUDICE**.

It further **ORDERED** that Plaintiff's discrimination based on national origin claim under Title VII of the Civil Rights Act of 1965 is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that jurisdiction is **DECLINED** over Plaintiff's remaining state law claim.

It is further **ORDERED** that Defendant's motion *in limine* [Dkt. #16] is **DENIED AS MOOT.**


                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge
Dated: February 10, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 10, 2011.

                                s/Tracy A. Jacobs
                                TRACY A. JACOBS